IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAITLIN ATWATER, Administratrix of the Estate of Kathleen Hunt Peterson, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 1:04CV00503 |
| NORTEL NETWORKS, INC.; NORTEL NETWORKS U.S. DEFERRED COMPENSATION PLAN; NORTEL NETWORKS RETIREMENT INCOME PLAN; and NORTEL NETWORKS LONG-TERM INVESTMENT PLAN, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

BULLOCK, District Judge

Plaintiff Caitlin Atwater ("Plaintiff") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against Nortel Networks, Inc. ("Nortel"), Nortel Networks U.S. Deferred Compensation Plan ("Deferred Compensation Plan"), Nortel Networks Retirement Income Plan ("Pension Plan"), and Nortel Networks Long-Term Investment Plan ("LTI Plan") (collectively "Defendants"). Plaintiff is the administratrix of the estate of Kathleen Hunt Peterson. Plaintiff alleges that Defendants wrongly paid plan benefits in early 2002 to Michael Peterson--the named beneficiary, the husband, and the then-indicted and alleged killer of

Kathleen Hunt Peterson--and that Defendants wrongly denied the benefit claims of the Estate of Kathleen Hunt Peterson in 2004. Plaintiff asserts her claim for relief under 29 U.S.C. § 1132(a)(1)(B). Before the court are the parties' cross motions for summary judgment.

FACTS

Each of the Defendant Plans is an employee benefit plan under ERISA. Defendant Nortel is the plan administrator and fiduciary for Defendant Deferred Compensation Plan, Defendant Pension Plan, and Defendant LTI Plan ("Defendant Plans"). Kathleen Hunt Peterson participated in the Defendant Plans during the course of her employment with Defendant Nortel. Kathleen Hunt Peterson designated her husband Michael Peterson as the beneficiary under each of the Defendant Plans.

Kathleen Hunt Peterson died on December 9, 2001. By December 14, 2001, Defendants were aware that Kathleen Hunt Peterson's death was being investigated as suspicious and that Michael Peterson was suspected of playing a role in his wife's death. On December 20, 2001, Michael Peterson was indicted for the murder of Kathleen Hunt Peterson.

On December 27, 2001, Plaintiff applied to be the administratrix of the estate of Kathleen Hunt Peterson.

Plaintiff was appointed Administratrix of the Estate on January 7, 2002. Plaintiff directed the estate's attorney, David Frankstone ("Mr. Frankstone") to apply for benefits under the Defendant Plans. Mr. Frankstone and his paralegal, Lisa Brola ("Ms. Brola"), subsequently contacted Defendant Nortel several times on Plaintiff's behalf.[1]

Ruth Hillis ("Ms. Hillis"), Defendant Nortel's Senior Benefits Counsel, researched the law regarding the propriety of distributing the benefits to Michael Peterson. Ms. Hillis determined that, absent perhaps a conviction for murder, there was no legal justification for denying distribution of benefits to Michael Peterson.

In February 2002, Ms. Hillis learned that Kathleen Hunt Peterson's death benefits were ready for distribution. Ms. Hillis also learned that Mr. Frankstone and Ms. Brola had expressed concerns to Defendant Nortel about the distribution of the benefits to Michael Peterson. Ms. Hillis contacted Mr. Frankstone and informed him that Defendants intended to distribute the plan benefits to the named beneficiary, Michael Peterson. The parties dispute the content of the conversation

---

[1] Before being indicted for the murder of Kathleen Hunt Peterson, Mr. Frankstone contacted Defendant Nortel on behalf of Michael Peterson regarding the Plan Benefits due him. At least until January 17, 2002, Michael Peterson referred to Mr. Frankstone as representing him in his effort to recover Plan Benefits.

3

between Mr. Frankstone and Ms. Hillis,[2] but Defendants' continued determination to distribute payment to Michael Peterson is undisputed. No further action was taken on behalf of Plaintiff to challenge or oppose distributions until August 23, 2002.[3]

On February 8, 2002, Defendant LTI Plan distributed the gross amount of $36,700.47 to the designated beneficiary, Michael Peterson. On February 15, 2002, Defendant Pension Plan distributed the gross amount of $124,283.87 to the designated beneficiary, Michael Peterson. On March 25, 2002, Defendant Deferred Compensation Plan issued a check for benefits payable in the gross amount of $212,790.67 to the designated beneficiary, Michael Peterson. On May 31, 2002, Defendant Deferred Compensation Plan issued a check in the amount of $3,683.34, to correct a mistake regarding an earlier distribution,[4] to the

---

[2] Defendants contend that Mr. Frankstone told Ms. Hillis that Plaintiff did not plan to file a legal challenge to the payments to Michael Peterson. Although a factual dispute may exist regarding the contents of the conversation between Mr. Frankstone and Ms. Hillis, Defendants had a duty to determine the proper beneficiary in light of the potential application of the law regarding slayers.

[3] In August 2002, Plaintiff released Mr. Frankstone as the Estate's attorney and sent Defendant Nortel a letter requesting information regarding plan benefits.

[4] On January 25, 2002, TBG Financial Services ("TBG"), an outside service provider for Defendant Deferred Compensation Plan, mistakenly distributed $10,000 in benefits, less applicable tax withholdings, to a joint account in the name of Kathleen Hunt Peterson and Michael Peterson. TBG had previously learned that Kathleen Hunt Peterson's employment with Defendant Nortel had
(continued...)

4

designated beneficiary, Michael Peterson.  Defendant Deferred Compensation Plan distributed to Michael Peterson a total of $223,182.46.

On October 10, 2003, Michael Peterson was convicted of the first-degree murder of Kathleen Hunt Peterson.  On November 18, 2003, Plaintiff tendered a formal written claim to each of the Defendant Plans seeking plan benefits.  Defendant Plans reviewed and denied Plaintiff's claims.  Plaintiff appealed through the Defendant Plans' respective administrative appeal processes, and the denials were upheld.

---

[4](...continued)
ended but did not know of Kathleen Hunt Peterson's death.  TBG mistakenly began distributing installments of her benefits, instead of the lump sum death benefit provided by Defendant Deferred Compensation Plan.  After learning of the mistaken payment, Defendant Nortel informed TBG of Kathleen Hunt Peterson's death, and no further benefit installments were distributed thereafter.
   On May 31, 2002, Defendant Deferred Compensation Plan issued a check for $3,683.34, the amount withheld from the mistaken installment for taxes, to reflect the appropriate total lump sum distribution due the named beneficiary, Michael Peterson.

DISCUSSION

I.  <u>Summary Judgment Standard</u>

Summary judgment must be granted when the pleadings, responses to discovery, and the record show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of persuasion on all relevant issues. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. <u>See</u> Fed. R. Civ. P. 56(e); <u>see</u> also <u>Cray Communications, Inc. v. Novatel Computer Sys., Inc.</u>, 33 F.3d 390, 393-94 (4th Cir. 1994) (moving party on summary judgment may simply argue the absence of evidence by which the non-moving party can prove her case). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. <u>Id</u>. at 255. However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]."

Id. at 252. Factual disputes about immaterial matters are irrelevant to a summary judgment determination. Frank v. U.S. West, Inc., 3 F.3d 1357, 1361 (10th Cir. 1993) (citing Anderson, 477 U.S. at 248).

II. Slayer-Beneficiaries Cannot Benefit from their Wrongdoing in the ERISA Context

Although ERISA does not include a slayer provision, it reasonably follows that "Congress could not have intended ERISA to allow one spouse to recover benefits after intentionally killing the other spouse." Connecticut Gen. Life Ins. Co. v. Riner, 351 F. Supp. 2d 492, 497 (W.D. Va. 2005). There is some debate about whether federal common law regarding slayers preempts state slayer law in the ERISA context. See, e.g., Ruark v. Bd. of Trs. of Boilermaker-Blacksmith Nat'l Pension Trust, 2003 WL 23305154, *2 (D. Md. 2003) ("There exists a divergence of opinion as to whether federal common law under ERISA recognizes the 'slayer's rule,' . . . or whether, instead, the 'slayer's rule' recognized by the various states at common law (or by statutory enactment) simply survives as non-preempted"). Dicta in the Supreme Court's decision in Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141 (2001), indicates that state slayer statutes are not preempted and are applicable in the ERISA context. In Egelhoff, the Court stated that "[i]n the ERISA context, . . . [state]'slayer' statutes could revoke the

7

beneficiary status of someone who murdered a plan participant. . . . [T]he principle underlying the statutes--which have been adopted by nearly every State--is well established in the law and has a long historical pedigree predating ERISA." Id. at 152.

In North Carolina, a slayer may be barred from receiving a monetary benefit from the killing of another person by two means: (1) the slayer statute, N.C. Gen. Stat. §§ 31A-3 et seq., under which a person convicted of killing is barred from acquiring any property or receiving any benefits resulting from the victim's death; and (2) the common law rule that no one may profit from their own wrongdoing. See Quick v. United Benefit Life Ins. Co., 287 N.C. 47, 56-57, 213 S.E.2d 563, 569 (1975); State Farm Life Ins. Co. v. Allison, 128 N.C. App. 74, 76-77, 493 S.E.2d 329, 330-31 (1997). The civil standard of proof by a preponderance of the evidence is all that is necessary to prevent a person from receiving proceeds as a slayer. See, e.g., Jones v. All Am. Life Ins. Co., 68 N.C. App. 582, 585, 316 S.E.2d 122, 125 (1984) ("Although plaintiff does not fit the statutory definition of 'slayer' because she has not been convicted of killing Hilliard, . . . she nonetheless is barred by the common law from receiving the proceeds" after having been determined to be the slayer by a civil jury according to the "preponderance of the evidence" standard).

The federal common law rule regarding slayers derives from the common law principle that "[n]o person should be permitted to profit from his own wrong." Prudential Ins. Co. v. Tull, 690 F.2d 848, 849 (4th Cir. 1982) (citing Shoemaker v. Shoemaker, 263 F.2d 931, 932 (6th Cir. 1959); United States v. Foster, 238 F. Supp. 867, 868 (E.D. Mich. 1965); United States v. Kwasniewski, 91 F. Supp. 847, 851 (E.D. Mich. 1950); Restatement of Restitution §§ 187, 189 (1937)).  Equitable in nature, the rule prevents slayers from receiving the financial benefits from their victims' deaths.  See generally Addison v. Metro. Life Ins. Co., 5 F. Supp. 2d 392, 393-94 (W.D. Va. 1998).

Here, Michael Peterson was ultimately convicted of the murder of Kathleen Hunt Peterson, the participant in the Defendant Plans.  As the convicted murderer of the plan participant, Michael Peterson would have been barred from recovering the deceased's ERISA benefits under either North Carolina's slayer statue or under federal common law.  At the time the ERISA benefit distributions were made to Michael Peterson, however, only an indictment had been returned in the criminal matter.  Defendants claim that the lack of a judicial determination regarding Michael Peterson's role in the death of Kathleen Hunt Peterson prevented them from denying distribution to Michael Peterson.

9

III.  Fiduciary Duties under ERISA

ERISA provides that plan fiduciaries should act according to the prudent man standard of care.  29 U.S.C. § 1104. Specifically, the statute provides that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> . . .
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> . . .
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

Id. "The fiduciary responsibility provisions [of ERISA] invoke the common law of trusts."  Faircloth v. Lundy Packing Co., 91 F.3d 648, 656 (4th Cir. 1996) (citing Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985); and S. Rep. No. 127, 93d Cong. (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4865 ("The fiduciary responsibility section, in essence, codifies and makes applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.").  Notably, under the common law of trusts, "[a] trustee is . . . expected to 'investigate the identity of the

10

beneficiary when the trust documents do not clearly fix such party.'" Central States, Southeast and Southwest Areas Pension Fund, 472 U.S. at 572 (citing G. Bogert & G. Bogert, Law of Trusts and Trustees § 583, p. 348-49, n.40 (2d rev. ed. 1980)). Furthermore, "[a] trustee has the obligation to guard the assets of the trust from improper claims, as well as the obligation to pay legitimate claims." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 207 (4th Cir. 1984).

An ERISA plan fiduciary may initiate an interpleader action if the proper beneficiary is unknown. See, e.g., Metro. Life Ins. Co. v. Hamm, 2003 WL 22518183, *5 (E.D. Pa. 2003) (interpleader action filed by insurance company allowed despite the fact that the alleged slayer-beneficiary had "not been arrested, formally charged, or convicted of homicide"); Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 442 (2d Cir. 2002) (allowing a plan administrator to interplead for the purpose of determining the proper beneficiaries). There need not be multiple claimants asserting claims to the plan benefits for interpleader to be possible, so long as "[t]wo or more adverse claimants . . . are claiming or may claim to be entitled to such money or property." 28 U.S.C. § 1335 (emphasis added); see, e.g., Fresh Am. Corp. v. Wal-Mart Stores, Inc., 2005 WL 735006, *4 (N.D. Tex. 2005) ("to sustain an interpleader, [a party] is required only to prove the existence of 'adverse claimants who

11

could [attempt] to claim these funds.'" Id. (quoting Rhoades v. Casey, 196 F.3d 592, 601 (5th Cir. 1999) (emphasis added)).

Defendants correctly argue that a judicial determination regarding whether Michael Peterson killed Kathleen Hunt Peterson was necessary to prevent Michael Peterson from receiving benefits altogether; an indictment alone is insufficient to bar an alleged slayer-beneficiary from receiving a distribution. Defendants were not prevented from filing an interpleader motion in order to obtain a judicial determination regarding the proper beneficiary, however. Furthermore, the lack of multiple active claimants did not undermine the need to withhold payment to Michael Peterson. The indictment made it at least foreseeable that Michael Peterson would be judicially determined to be the killer of the plan participant, thus giving rise to a fiduciary responsibility to act in response to such a formal accusation. If a pending judicial determination could serve to bar a distribution to a particular beneficiary, it reasonably follows that there is a fiduciary responsibility to delay the distribution to that person until a judicial determination regarding that beneficiary's ability to receive plan benefits has been made. See, e.g., Estate of Curtis by Curtis v. Prudential Ins. Co., 839 F. Supp. 491, 495 (E.D. Mich. 1993) (finding that "if defendants had, or should have had, notice that [the plan participant's husband] was suspected in his wife's murder, then . . . a prudent man, as

12

defined by section 1104(a)(1)(B), would have delayed paying over the insurance proceeds . . . until the cloud surrounding the circumstances of the murder had cleared").

IV. Denials of Plaintiff's Claims Subject to the Reasonableness Standard

Plaintiff seeks relief under 29 U.S.C. § 1132(a)(1)(B), which provides that a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." A court reviews a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) using the de novo standard of review unless the benefit plan gives the fiduciary discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989). If the fiduciary has discretion to decide eligibility, then the court must review the decision for an abuse of discretion and the administrator's interpretation of the plan will not be disturbed as long as the fiduciary's decision is reasonable. See Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341-42 (4th Cir. 2000).

To determine whether a fiduciary's exercise of discretion is reasonable, numerous factors should be considered, including:

13

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth, 201 F.3d at 342. The Plaintiff bears the burden of demonstrating that the fiduciary's decision was unreasonable. See Saah v. Contel Corp., 780 F. Supp. 311, 315 (D. Md. 1991), aff'd, 978 F.2d 1256 (4th Cir. 1992).

Here, Defendant Deferred Compensation Plan granted discretion to its Administrative Committee ("DCAC") to decide questions of benefit eligibility and to determine benefit claims. Defendant LTI Plan and Defendant Pension Plan each granted Defendant Nortel's Employee Benefits Committee ("EBC") the discretion to decide questions of benefit eligibility and to determine benefit claims. Because Defendant Deferred Compensation Plan gave discretion to DCAC and Defendant LTI Plan and Defendant Pension Plan gave discretion to EBC to decide eligibility, the claim denials will not be overturned unless they are unreasonable. Plaintiff's claims were denied because the benefits had already been paid in their entirety to Michael Peterson and because Plaintiff allegedly waived any objection to the distributions to Michael Peterson.

14

Absent an intentional and unequivocal waiver by Plaintiff, Defendants' denial of Plaintiff's claim was unreasonable for several reasons.  First, the plan documents did not mandate the distributions to Michael Peterson as argued by Defendants.  Defendants maintain that the distributions to Michael Peterson were made pursuant to each Plan's provisions, all of which directed that, upon Kathleen Hunt Peterson's death, the benefits were to be paid out to the participant's beneficiary as soon as administratively or reasonably practicable.  As discussed above, however, Michael Peterson's indictment for the murder of Kathleen Hunt Peterson gave rise to a fiduciary duty to withhold payment to Michael Peterson until a judicial determination had been made regarding his eligibility to take under the Plans.  It was both administratively and reasonably practicable to wait until such a determination had been made or to interplead the benefits to obtain a judicial determination.

Second, the purposes and goals of the Plans likewise do not support the denial of Plaintiff's claims.  The Plans' death benefits were intended to provide benefits to the named beneficiary or to the estate of the plan participant if the named beneficiary predeceased the plan participant.  Michael Peterson's murder conviction makes him ineligible to receive the benefits under the Plans, and therefore he should be treated as having

15

predeceased Kathleen Hunt Peterson unless Plaintiff has made an intentional waiver of known benefits.

The third reason that the denial of Plaintiff's claim is unreasonable is that the reason and principle underlying the decision-making process are flawed. Defendants allegations that the estate waived any challenge to the distribution of benefits to Michael Peterson do not relieve Defendants of their fiduciary responsibilities. None of the Plans were intended to provide a financial benefit to the killer of the participant. Although under normal circumstances the Plans mandate swift payment to the named beneficiary, Defendants' determination to distribute benefits swiftly to Michael Peterson and later to deny benefits to Plaintiff was seriously flawed. Accordingly, because the denial of Plaintiff's claim for benefits under the Plans was unreasonable, the court finds that DCAC and EBC abused their discretion in reaching their decisions unless such abuse is excused because of the doctrines of waiver or estoppel.

CONCLUSION

For the foregoing reasons, the plan benefits should have been paid to the estate of Kathleen Hunt Peterson unless the estate made an intentional waiver of known benefits or unless the estate is otherwise estopped from making such claim. Defendants'

motion for summary judgment will be denied and Plaintiff's motion for summary judgment will be granted in part, leaving for determination only the factual issues surrounding Defendants' claims of waiver and estoppel.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

                                            */s/ Frank W. Bullock, Jr.*
                                            United States District Judge

September 6, 2005

17